IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Dr. John Meiszner, as Trustee of the Southwest Psychiatric Associates, Ltd. Employees' Retirement Plan, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 04 C 8017 |
| v. | ) ) | |
| Suburban Bank & Trust Company, | ) ) ) | |
| Defendant. | | |

### MEMORANDUM OPINION AND ORDER

Dr. John Meiszner ("Plaintiff") is the sole owner of Southwest Psychiatric Associates, Ltd. ("Southwest Psychiatric"). In 1980, Southwest Psychiatric established the Southwest Psychiatric Associates, Ltd. Employees' Retirement Plan (the "Southwest Plan"). Plaintiff has been the sole owner of Southwest Psychiatric and has served as Trustee of the Southwest Plan since the plan's inception. Suburban Bank & Trust Company ("Defendant") became the investment manager to the plan in February, 2000 when it acquired the St. Paul Trust Company, the prior investment manager.

At the time of its inception, the Southwest Plan had two participants: Plaintiff and his employee, Carol Gliwa ("Ms. Gliwa"). In 1994, Ms. Gliwa retired from Southwest Psychiatric and Plaintiff became the sole remaining participant in the Southwest Plan.[1] Plaintiff has not argued nor presented any facts that there has been any other participant or individual eligible to participate in the plan since Ms. Gliwa's departure. In March 2000, Southwest Psychiatric was administratively dissolved as an Illinois corporation due to its failure to file an annual report. In 2004, the corporation was reinstated in accordance with Illinois law.

Plaintiff brings this action as Trustee of the Southwest Plan. His complaint alleges a series of violations against Defendant emanating from its administration of the Southwest Plan between January, 2000 and February, 2003. During this period, the Southwest Plan's assets were invested in various funds, one of which was the Fixed Income Fund. Plaintiff alleges three counts against Defendant: that Suburban Bank failed to diversify and act prudently in relation to assets held in the Fixed Income

---

[1] Plaintiff and Defendant cite different years for the date Ms. Gliwa ceased participating in the Southwest Plan. The difference between the two dates is not material and does not affect the outcome of this matter. For the purposes of this opinion, I have used the 1994 date cited by Plaintiff.

2

Fund in violation of ERISA § 404(a)(1)(B) and (C), 29 U.S.C. § 1104(a)(1)(B) and (C) (Count 1); that Suburban Bank held unqualified assets in the Fixed Income Fund in violation of ERISA § 404(a)(1)(B) and (D), 29 U.S.C. § 1104(a)(1)(B) and (D) (Count II); and that Suburban Bank breached its common law fiduciary duty in its management of the Southwest Plan (Count III).

Defendant moves for summary judgment on Counts I and II arguing that the Southwest Plan did not qualify for ERISA coverage between January, 2000 and February, 2003. Defendant presents two theories as to why the Southwest Plan was not an ERISA plan. First, Defendant argues that Southwest Plan could not qualify as an ERISA plan and receive ERISA coverage because between January, 2000 and February, 2003, Plaintiff was both the sole participant in the plan and the sole shareholder of Southwest Psychiatric. Second, Defendant argues that the Southwest Plan did not qualify for ERISA coverage during this time period because, according to the plan agreement, the plan terminated upon Southwest Psychiatric's dissolution as an Illinois corporation in March, 2000. I find it only necessary to address the first of Defendant's two arguments as it is dispositive of this matter.

## I. Analysis

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Where the facts are in dispute, I have construed the facts in the light most favorable to the Plaintiff.

### i. ERISA Background

There are two different types of ERISA employee benefit plans: employee welfare benefit plans and employee pension benefit plans. 29 U.S.C. § 1002(3). Plaintiff's claims seek ERISA protection for the Southwest Plan as an employee pension benefit plan under ERISA §§ 29 U.S.C. §§ 1104(a)(1)(B), (C), and (D). These sections, which are a part of ERISA Title I, impose fiduciary obligations on plan trustees and investment managers.

The term "employee benefit plan" is further defined and clarified in 29 C.F.R. § 2510.3-3. Section 2510.3-3(a) first

4

states that ERISA Title I protections only apply to "employee benefit plans." Sections 2510.3-3(b) and (c) then proceed to exclude certain plans from the definition of "employee benefit plan":

> (b) **Plans without employees.** For purposes of title I of the Act and this chapter, the term "employee benefit plan" **shall not include** any plan, fund or program, other than an apprenticeship or other training program, under which **no employees are participants covered under the plan**, as defined in paragraph (d) of this section. For example, a so-called "Keogh" or "H.R. 10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under title I. Similarly, partnership buyout agreements described in section 736 of the Internal Revenue Code of 1954 will not be subject to title I.
>
> (c) Employees. For purposes of this section:
>
> (1) An individual and his or her spouse **shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse . . .**

29 C.F.R. § 2510-3.3(b), (c) (emphasis added). The language of § 2510-3.3(a) states that "plans without employees" are not "employee benefit plans" and will not be covered by ERISA Title I. Section 2510.3-3(c)(1) then explains that an individual and his or her spouse who wholly own a business are not employees for

5

purposes of this section. Therefore, any plan that has as its only participant a sole owner and his or her spouse, is a "plan without employees" and does not qualify for Title I ERISA coverage. A plan that includes at least one employee in addition to the sole owner, however, will be covered by Title I ERISA coverage.[2]

### ii. Application of § 2510-3.3

Both parties agree that "plans without employees" do not receive ERISA Title I coverage. The parties also agree that the Southwest Plan qualified as an ERISA "employee benefit plan" up

---

[2] This interpretation of § 2510.3-3 is consistent with the Supreme Court's ruling last year in *Yates v. Heldon*, 541 U.S. 1 (2004). The issue in *Yates* was whether a sole owner's interest in a pension plan would be protected in a bankruptcy proceeding by the ERISA anti-alienation protection. *Id.* at 9. Whether the plan could qualify as an "employee benefit plan" or the meaning of "plans without employees" was not at issue because the plan in *Yates* always had other employees participating and was not subject to § 2510.3-3(b). *Id.* at 8. The question before the Court was whether a sole owner could participate in a plan that qualified as an "employee benefit plan" under § 2510.3-3(a). In resolving this related issue, the court did, however, clarify the meaning of § 2510.3-3(c). The court stated that a sole shareholder may "participate in a pension plan covered by [ERISA] . . . if the plan covers one or more employees other than the business owner and his or her spouse." *Id.* at 6 (emphasis added). The Court reaffirmed this position later in the opinion in stating that "[p]lans that cover only sole owners or partners and their spouses, the regulation instructs, fall outside Title I's domain. Plans covering working owners and their nonowner employees, on the other hand, fall entirely within ERISA's compass." *Id.* at 21.

until Ms. Gliwa ceased participation in 1994. The parties disagree, however, as to whether the Southwest Plan qualified as an "employee benefit plan," or was instead a "plan without employees," between January, 2000 and February, 2003.

Defendant argues that it is appropriate for the court to evaluate Southwest Plan for ERISA qualification based on its composition between January, 2000 and February, 2003. The fact that the plan qualified for ERISA coverage prior to 1994 would be irrelevant. This would lead to the following analysis: Plaintiff was the sole participant in the Southwest Plan during this time period. Plaintiff has always been the sole owner of Southwest Psychiatric and did not qualify as an employee under § 2510.3-3(c)(1). Therefore, the Southwest Plan was a "plan without employees" under § 2510.3-3(b) and does not qualify for ERISA coverage during this period.

On the other hand, Plaintiff argues that it is appropriate for the court to determine if the Southwest Plan qualified as an "employee benefit plan" at any point in its existence. Plaintiff argues that once a plan qualifies for ERISA coverage, it does not lose that coverage simply because its participation is reduced to a single participant who is a sole owner. According to Plaintiff, the Southwest Plan qualified as an "employee benefit

plan" prior to 1994 and therefore continued to be an ERISA "employee benefit plan" between January, 2000 and February, 2003.

Plaintiff suggests that *In re Baker* supports this theory. 114 F.3d 636 (7th Cir. 1997). Baker was the sole remaining participant in a pension plan and was a 50.9% shareholder of Bakco Data, Inc. ("Bakco"). *Id.* at 639. At one point in time, the Bakco plan had as many as eighteen participants, but Baker was the sole participant at the time the matter before the court arose. *Id.* The Seventh Circuit considered whether Baker's irregular transactions regarding a loan he took from Bakco's pension plan would leave his pension unsheltered in a bankruptcy proceeding. *Id.* at 638. Part of the court's inquiry was to determine if the plan qualified for ERISA coverage so that Baker's pension would be protected by the ERISA anti-alienation rule. *Id.* The court concluded that the Bakco plan did qualify for ERISA coverage and that Baker's interest was protected by the ERISA anti-alienation provision. *Id.* at 639. Plaintiff argues that the facts of this case are comparable to *Baker* and that the language of *Baker* supports his conclusion that the Southwest Plan did not lose its ERISA coverage because participation was reduced to one owner.

The present case and *Baker* are factually dissimilar. Both the Defendant in this case and Baker were the sole remaining participants in their respective pension plans. The two varied, however, in the extent of their ownership of their respective corporations. Defendant is the sole shareholder in Southwest Psychiatric. Baker was only a 50.9% owner of Bakco. Section 2510.3-3(c) specifically removes an individual and his or her spouse who *wholly own* a corporation from its definition of employee. On the other hand, controlling owners like Baker, who are only part-owners of a corporation, are not covered by the plain language of this statute and qualify as employees under § 2510.3-3. As a result, the Bakco plan could have still qualified for ERISA coverage under § 2510.3-3 with only Baker as a participant because he met the statutory definition of employee. Therefore, the fact that the Bakco plan was found to qualify for ERISA coverage does not imply that ERISA coverage persists even though the plan ceased to qualify under § 2510.3-3. That issue was not before the court.

Furthermore, the *Baker* court acknowledged the vitality of § 2510.3-3(c)(1) and its exclusion of plans whose participants are sole owners. *Id.* at 639 ("[T]he Department of Labor has issued a regulation stating that a corporation's sole owner is not an

9

"employee" for the purpose of activating Subchapter I or ERISA . . . Baker was not Bakco's sole equity investor; he owned 50.9 percent of its stock."). Given the court's affirmation of § 2510-3.3 and the fact the court was not presented with a sole owner, *Baker* is not dispositive.

The question before this court was addressed in *Lowenschuss v. Selnick,* 171 F.3d 673 (9th Cir. 1999). In *Lowenschuss*, the issue was whether a debtor's interest in his pension plan would be shielded by ERISA in a bankruptcy proceeding. *Id.* at 676. A necessary part of this inquiry was to determine if the plan was an "employee benefit plan" and qualified for ERISA coverage. Lowenschuss was both the sole owner of a law firm and the sole remaining member of its pension plan. *Id.* at 680-81. At one point in time, there had been another employee participant in the pension plan, but that employee had ceased participation seven years before the bankruptcy proceeding. *Id.* at 680. The court held that even though the plan had qualified as an "employee benefit plan" in the past when the additional employee participated, the plan lost its ERISA coverage when the sole owner became the sole participant in the plan because it had become a "plan without employees." *Id.* at 680-81.

*Lowenschuss* held that it is appropriate to evaluate a plan's ERISA qualification based on its composition at the time of the events in question in the action before the court. *Id.* at 680. *Lowenschuss* is consistent with the wording of § 2510.3-3. The regulation states that "the term 'employee benefit plan' shall not include any plan . . . under which *no employees are participants* covered under the plan." (emphasis added). 29 C.F.R. § 2510.3-3(b). The regulation is written in the present tense and makes no mention of past employee participation.

The decision is also consistent with the underlying purpose of § 2510-3.3. In *Lowenschuss*, the court explained that ERISA was designed "'to remedy abuses by employers who manage pension plan assets held in trust for workers in traditional employer-employee relationships'. . . [and that] self-employed owners of companies that sponsor pension plans were deliberately excluded from ERISA's protections because these individuals can protect their own beneficial interests." *Lowenschuss*, 171 F.3d at 680 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985)). To give these protections to a sole owner simply because six years ago the plan happened to have an additional participant would undermine this purpose.

In the present case, it is undisputed that Plaintiff was the sole owner of Southwest Psychiatric and the sole participant in the Southwest Plan between January, 2000 and February, 2003. Therefore, I find that between January, 2000 and February, 2003, the Southwest Plan was a "plan without employees" under § 2510.3-3(b). The Southwest Plan does not qualify for ERISA coverage during this time period and Plaintiff cannot bring the actions stated in Counts I and II of his complaint. As a result, I grant Defendant's motion for summary judgment on Counts I and II of the complaint.

## II. Attorney's Fees

Defendant requests attorney's fees under ERISA's fee-shifting statute 29 U.S.C. § 1132(g)(1). In *Stark v. PPM Am. Inc.*, the Seventh Circuit articulated that the test for application of the fee-shifting statute was to determine if "the losing party's position [was] substantially justified and taken in good faith, or was that party simply out to harass its opponent?" 354 F.3d 666, 673 (quoting *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 593 (7th Cir. 2000) (citation omitted)). Although Defendant has prevailed on summary judgment, I do not find that Plaintiff's action was taken in bad faith or that it was unreasonable. Defendant's request is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: October 31, 2005